Helen FROST; et al., Plaintiffs,

v.

William PERRY, Secretary of the United States Department of Defense; et al., Defendants.

No. CV–S–94–714–PMP (RLH).

United States District Court, D. Nevada.

March 6, 1996.

---

Jonathan Turley, The National Law Center George Washington University, Washington, DC, for plaintiffs.

David Anderson, Neil Koslowe, U.S. Department of Justice, Environmental Defense Section, Washington, DC, for defendants.

### ORDER

PRO, District Judge.

Before the Court is the Defendants' Motion for Summary Judgment (# 70), filed June 16, 1995. Plaintiffs filed an Opposition to Defendants' Motion for Summary Judg-

ment (# 92) on July 12, 1995. Defendants filed their Reply (# 115) on July 26, 1995.

In accordance with the Local Rules, Defendants also filed a Statement of Uncontested Material Facts in Support of Motion for Summary Judgment (# 78) on June 23, 1995. Plaintiffs filed under seal a Statement of Contested Material Facts in Opposition to the Motion for Summary Judgment (# 133) on August 7, 1995. Plaintiffs also filed Affidavits (## 134 & 135) under seal as exhibits to the Statement (# 133).

Also before the Court is the Plaintiffs' Motion for Consideration of Exhibits in Support of Plaintiffs' Statement of Contested Material Facts (# 204), filed February 16, 1996. Defendants filed under seal an Opposition (# 210) on March 4, 1996.

Also before the Court is the Plaintiffs' Motion to File First Amended Complaint (# 146), filed September 12, 1995. Defendants filed their Memorandum in Opposition to Plaintiffs' Motion to File an Amended Complaint (# 159) on October 5, 1995. Plaintiffs filed a Reply (# 166) on October 23, 1995.

Defendants filed a Notice of Untimely Filing by Plaintiffs of Motion to File an Amended Complaint (# 175) on November 8, 1995. Plaintiffs then filed a Motion (1) to Strike Defendants' Notice of Untimely Filing and (2) for a Judicial Ruling on Consultation Certification (# 176) under seal on November 13, 1995. Defendants filed an Opposition (# 187) on November 29, 1995, and Plaintiffs filed a Reply (# 191) on December 19, 1995.

### I. Background

This is a citizen suit brought under § 7002 of the Resource Conservation and Recovery Act ("RCRA"), codified at 42 U.S.C. § 6972. Plaintiffs are former workers at a classified site operated by the United States Air Force near the Groom Dry Lake Bed in Nevada that is the subject of this litigation. For the purposes of this litigation and because of its classified status, the Air Force site is referred to as "the operating location near Groom Lake."

Plaintiffs bring eleven claims for relief.[1] Plaintiffs allege violations of RCRA in the storage, treatment, and disposal of hazardous waste at the operating location near Groom Lake, and seek declaratory and injunctive relief, civil penalties, attorney's fees and costs.[2]

## II. Motion for Summary Judgment

Defendants move for summary judgment on the basis of the national security issues present in this lawsuit. Defendants assert that national security prevents Plaintiffs from establishing a *prima facie* case for any of their claims. On February 21, 1995, the Secretary of the Air Force, Sheila Widnall, invoked the military and state secrets privilege over information involving the operating location near Groom Lake that relates to the following: (1) program names; (2) mission; (3) capabilities; (4) military plans, weapons, or operations; (5) intelligence sources and methods; (6) scientific or technological matters; (7) certain physical characteristics; (8) budget, finance, and contracting relationships; (9) personnel matters; and (10) security sensitive environmental data. *See* Unclassified Declaration of Secretary Widnall.

### A. Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir.1982), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968), *reh'g denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); *Commodity Futures Trading Com. v. Savage*, 611 F.2d 270 (9th Cir.1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other sim-

1. Plaintiffs' Complaint (#1) contains eleven claims for relief alleging: violations of RCRA reporting and inventory requirements (First Claim for Relief); violations of Nevada's ban on open burning of hazardous waste (Second Claim for Relief); violations of various requirements imposed on facilities that treat, store or dispose of hazardous waste (Third, Fourth, and Fifth Claims for Relief); illegal land disposal of hazardous waste (Sixth Claim for Relief); failure to comply with requirements regarding contingency plans and emergency procedures (Seventh Claim for Relief); failure to comply with recordkeeping and reporting requirements imposed on hazard-ous waste facilities (Eighth and Ninth Claims for Relief); failure to adequately design surface impoundments (Tenth Claim for Relief); and improper land treatment of hazardous waste (Eleventh Claim for Relief).

2. In a related action in this District, *Doe v. Browner*, CV–S–94–795–PMP (RLH), Plaintiffs asserted claims that Defendant Carol M. Browner, the Administrator of the United States Environmental Protection Agency, failed to perform her statutory duty to enforce RCRA against the Air Force.

ilar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Board v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979), *reh'g denied,* 441 U.S. 968, 99 S.Ct. 2420, 60 L.Ed.2d 1074 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982); *Admiralty Fund v. Jones,* 677 F.2d 1289, 1293 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1); *see also Avia Group International, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1560 (Fed.Cir.1988).

### B. Military and State Secrets Privilege

■ The military and state secrets privilege is a common law evidentiary privilege that allows the United States to withhold from discovery military secrets when disclosure would be harmful to national security. *Bentzlin v. Hughes Aircraft Co.*, 833 F.Supp. 1486, 1495 (C.D.Cal.1993). The privilege is described in *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953).

The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect.

*United States v. Reynolds,* 345 U.S. 1, 7–8, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953) ("*Reynolds*"). While "the term 'military or state secrets' is amorphous in nature, it should be defined in the light of reason and experience, much in the same way that the term 'national defense' has been defined ... i.e., a generic concept of broad connotations, referring to the military and naval establishments and the related activities of national preparedness." *Jabara v. Kelley*, 75 F.R.D. 475, 483 n. 25 (E.D.Mich.1977) (internal citations and quotations omitted). The privilege has been held to apply to "information that would result in impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments, or where disclosure would be inimical to national security." *Black v. United States,* 62 F.3d 1115, 1118 (8th Cir. 1995) (internal citations and quotations omitted), *petition for cert. filed,* (Nov. 13, 1995).

■ To properly invoke the military and state secrets privilege, the head of the department which has control over the matter, after actual personal consideration, must formally claim the privilege. *Reynolds,* 345 U.S. at 7–8, 73 S.Ct. at 532; *see also Frost v. Perry,* 161 F.R.D. 434, 438 (D.Nev.1995) (citing *In re United States,* 872 F.2d 472, 475 (D.C.Cir.1989), cert. dismissed, 493 U.S. 960, 110 S.Ct. 398, 107 L.Ed.2d 365 (1989); *Ellsberg v. Mitchell,* 709 F.2d 51, 56 (D.C.Cir. 1983), *cert. denied,* 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984); and *Halkin v. Helms,* 690 F.2d 977, 991 (D.C.Cir.1982)).

The Secretary of the Air Force, Sheila E. Widnall, asserts the military and state secrets privilege in her Unclassified Declaration of February 21, 1995. *See* Unclassified Declaration and Claim of Military and State Secrets Privilege of Sheila E. Widnall, Secretary of the Air Force ("Unclassified Secretary Declaration"). That Unclassified Declaration states in part as follows:

> I have concluded that release of certain information relevant to these lawsuits would necessitate disclosure of properly classified information about the Air Force operating location near Groom Lake, Nevada. I am satisfied that the information described in the classified Declaration is properly classified. I have further determined that the information described in the classified Declaration, if released to the public, could reasonably be expected to cause exceptionally grave damage to the national security. It is not possible to discuss publicly the majority of information at issue without risking the very harm to the national security that protection of the information is intended to prevent.
>
> . . . . .
>
> It is my judgment, after personal consideration of the matter, that the national security information described in this Declaration and in the classified Declaration, concerning activities at the U.S. Air Force operating location near Groom Lake, Nevada, constitutes military and state secrets. As a result, disclosure of this information in documentary or testimonial evidence must be barred in the interests of national security of the United States. Pursuant to the authority vested in me as Secretary of the Air Force, I hereby invoke a formal claim of military and state secrets privilege with respect to the disclosure of the national security information listed in paragraph four of this Declaration and more fully discussed in the classified Declaration, whether through documentary or testimonial evidence.

Unclassified Secretary Declaration, ¶¶ 2, 6. The Court has held that the privilege was properly invoked by Secretary Widnall in this case, and indeed, the Court has also held that the privilege, as invoked, covered vari-

ous items of discovery requested by Plaintiffs.

## C. Discussion

Having determined that the military and state secrets privilege applies and was properly invoked in this case, the Court must now determine "whether and how the case may proceed in light of the privilege." *Fitzgerald v. Penthouse Int'l, Ltd.,* 776 F.2d 1236, 1243 (4th Cir.1985). Defendants assert that due to Secretary Widnall's assertion of the privilege, Plaintiffs cannot establish their case and the Defendants are thus entitled to summary judgment. Defendants rely on the classified Declaration of the Vice Chief of Staff of the Air Force, General Thomas Moorman, for their assertion that the Plaintiffs cannot establish any elements of their claims due to national security. The Court has reviewed *in camera* the Declaration of the Vice Chief of Staff, *see* Order (# 152); *see also* Minutes (# 162), and the Court is satisfied that this Declaration shows that Plaintiffs cannot establish a prima facie case for any of the eleven claims for relief in Plaintiffs' Complaint (# 1).

Plaintiffs raise several arguments to counter the use of the privilege for the purpose of summary judgment. Plaintiffs assert that (1) the Motion for Summary Judgment is premature; (2) Defendants cannot assert the privilege to shield evidence of criminal violations; (3) Defendants may properly deny or admit allegations in this lawsuit, and inferences from such denials or admissions will not lead to disclosure of state secrets; (4) the Widnall Declaration did not invoke the privilege over the RCRA compliance status of the facility; and (5) Defendants cannot rely on the use of a secret Declaration to support its claim of state secrets.

■ With regard to Plaintiffs' first assertion, the Court notes that at the time the Defendants' Motion for Summary Judgment was filed, the Court had not yet ruled on three pending Motions to Compel (## 53, 58 & 62). Since the pending summary judgment motion was briefed by the parties, Plaintiffs also filed other Motions to Compel (## 153, 172, 177, 178, & 183). The Court denied all these motions. The Court there-

fore finds that resolution of the motion for summary judgment (# 70) is now proper.

■ Plaintiffs next contend that Defendants cannot assert the military and state secrets privilege to shield evidence of criminal violations. While the District of Columbia Circuit has recognized a difference between protecting information from disclosure "simply because its release might uncloak an illegal operation" and protecting information from disclosure because to do otherwise would reveal state secrets," *Founding Church of Scientology of Washington, D.C. v. National Security Agency,* 610 F.2d 824, 829 n. 49 (D.C.Cir.1979), the Court has found that the privilege was properly invoked here. When properly invoked, the privilege is absolute. *Ellsberg,* 709 F.2d at 57; *see also Halkin v. Helms,* 598 F.2d 1, 7 (D.C.Cir. 1978), *reh'g en banc denied,* (1979) ("*Halkin I*") ("[a] ranking of the various privileges recognized in our courts would be a delicate undertaking at best, but it is quite clear that the privilege to protect state secrets must head the list. The state secrets privilege is absolute"). If mere allegations of criminal conduct were sufficient to overcome the privilege, the privilege would be eliminated. *See Silets v. Department of Justice,* 945 F.2d 227, 231 (7th Cir.1991) (*en banc*) (agency's submissions in Freedom of Information Act case not undermined by mere allegations of bad faith), *cert. denied,* 505 U.S. 1204, 112 S.Ct. 2991, 120 L.Ed.2d 868 (1992); *Maxwell v. First Nat'l Bank of Maryland,* 143 F.R.D. 590, 598 (D.Md.1992) (assertion of privilege held proper because it protected national security, even if it also served to hide alleged illegalities), *aff'd,* 998 F.2d 1009 (4th Cir. 1993), *cert. denied,* — U.S. —, 114 S.Ct. 920, 127 L.Ed.2d 214 (1994); *Founding Church of Scientology,* 610 F.2d at 829 n. 49 (under FOIA, National Security Agency may refuse to produce documents that evidence illegal activity if disclosure would endanger national security). The Court therefore finds no merit to Plaintiffs' second assertion.

■ Plaintiffs next assert that the Defendants can deny or admit the allegations in this lawsuit without revealing state secrets, and further assert that any inferences from such denials or admissions will not lead to disclosures of state secrets. Throughout this lawsuit, Defendants have neither confirmed nor denied that hazardous waste has been stored, treated, or disposed of at the operating location because that information is classified and encompassed within the state secrets privilege asserted by Secretary Widnall. *See* Classified Declaration of Vice Chief of Staff of the Air Force, General Thomas Moorman. Such a policy of neither confirming nor denying information is consistent with other instances where such disclosure could harm national security. *See, e.g., Halkin I,* 598 F.2d at 6; *Weinberger v. Catholic Action,* 454 U.S. 139, 146, 102 S.Ct. 197, 203, 70 L.Ed.2d 298 (1981) (National Environmental Policy Act did not require an environmental impact statement to address the impact of nuclear weapons, where such a statement would compromise the Navy's policy of neither confirming nor denying the locations of those weapons); *Hudson River Sloop Clearwater, Inc. v. Department of Navy,* 659 F.Supp. 674, 677–87 (E.D.N.Y. 1987) (Navy not required to disclose publicly the impact of nuclear weapons in an environmental impact statement because of the need to maintain secrecy regarding the locations of nuclear weapons through the Navy's "neither-confirm-nor-deny" policy), *aff'd,* 891 F.2d 414 (2d Cir.1989). The Court therefore finds no merit to Plaintiffs' third contention.

■ Plaintiffs next assert that the Widnall Declaration did not invoke the military and state secrets privilege over the RCRA compliance status of the facility. However, Secretary Widnall invoked the privilege over ten categories of information involving the operating location near Groom Lake. Among these categories included "security sensitive environmental data." Unclassified Declaration of Sheila Widnall, Secretary of the United States Air Force, ¶ 4. The Classified Declaration describes in further detail the scope of the privilege as invoked. The Court therefore finds no merit to Plaintiffs' fourth assertion.

■ Plaintiffs finally assert that under Rule 56, the Defendants cannot rely on the use of a "secret" Declaration to support the claim of privilege, since such a "secret" Dec-

laration is not admissible in evidence. *See* Fed.R.Civ.P. 56(e) ("[s]upporting and opposing affidavits ... shall set forth such facts as would be admissible in evidence"). The Court finds Plaintiffs' assertion meritless. The need for a classified Declaration as that of General Moorman's only underscores the national security issues which are present in this lawsuit. Forcing Defendants to divulge the contents of such a Declaration would only result in further harm to the national security.

■ Plaintiffs do offer the affidavit of their counsel, Jonathan Turley, to counter the Defendants' assertions that they cannot establish a *prima facie* case. At the outset, the Court notes that none of the statements made by Mr. Turley are made on his own personal knowledge. Indeed, Mr. Turley's general statement that the information in the affidavit "is true and accurate to the best of my knowledge" is not sufficient to satisfy the requirements of Rule 56(e). *See Columbia Pictures Inds., Inc. v. Professional Real Estate Investors, Inc.,* 944 F.2d 1525, 1529 (9th Cir.1991), *aff'd,* 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993); *see also British Airways Board,* 585 F.2d at 952 ("legal memoranda ... are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment"). The affidavit is largely conclusory and misreads Defendants' Answer (# 12) in this case.

■ Mr. Turley, in his affidavit, refers to various photographic exhibits that are the subject of the Plaintiffs' Motion for In Camera Submission (# 93). These photographs are referred to as Plaintiffs Exhibits B-1 through B-11.

Mr. Turley's statements that the photographs "show a jet plane" at the operating location near Groom Lake, "show painted surfaces on the exterior of buildings" at the operating location near Groom Lake, "show motor vehicle" at the operating location near Groom Lake, and "show large machinery" at the operating location lack foundation, are not made upon personal knowledge, and constitute hearsay. Moreover, the Defendants represent that they cannot confirm or deny that the photographs depict what Plaintiffs

say they depict due to the military and state secrets privilege. These photos, then, do not create a genuine issue of material fact capable of defeating the Motion for Summary Judgment (# 70).

■ Plaintiffs offer under seal the affidavits of two John Doe plaintiffs (## 134, 135). However, to the extent this information is relevant, it is covered by the military and state secrets privilege as invoked by Secretary Widnall.

■ Finally, Plaintiffs recently filed their Motion for Consideration of Exhibits in Support of Plaintiffs' Statement of Contested Material Facts (# 204) ("Motion for Consideration") in order to supplement their opposition to the Defendants' Motion for Summary Judgment. However, Plaintiffs' Motion for Consideration was untimely filed. Briefing for the Motion for Summary Judgment ended on July 26, 1995, over seven months ago. Discovery in this case has closed, and the time for filing motions has long since passed. The Court will deny the motion due to the untimely filing. *See Ferdik v. Bonzelet,* 963 F.2d 1258, 1260 (9th Cir.1992) (district court has inherent power to control its own docket), *cert. denied,* 506 U.S. 915, 113 S.Ct. 321, 121 L.Ed.2d 242 (1992); *Butler v. Judge of United States District Court In and For Northern Dist. of Cal.,* 116 F.2d 1013, 1016 (9th Cir.1941) (same) (quoting *Landis v. North American Co.,* 299 U.S. 248, 253, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936)). However, even if the Court were to consider the exhibits submitted with the Motion (# 204) with the Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (# 92), Plaintiffs cannot defeat Defendants' Motion for Summary Judgment (# 70) since this information, to the extent that it is relevant, is covered by the military and state secrets privilege as invoked by Secretary Widnall.

Plaintiffs have failed to establish a genuine issue as to any material fact without running afoul of the military and state secrets privilege. The Moorman Declaration establishes that Plaintiffs cannot establish a prima facie case for any of their eleven claims for relief. The Court therefore finds that disclosure of any further information or a trial on this

matter risks significant harm to the national security.

### D. Dismissal

■ The military and state secrets privilege alone can be the basis for dismissal of an entire case. *Weston v. Lockheed Missiles & Space Co.*, 881 F.2d 814, 816 (9th Cir.1989) (citing *Fitzgerald*, 776 F.2d at 1241–42. Dismissal is appropriate where it is clear that national security interests prevent a plaintiff from establishing a prima facie case. *See Bareford v. General Dynamics Corp.*, 973 F.2d 1138, 1141 (5th Cir.1993) (dismissal appropriate because "plaintiffs would be unable to prove their case without classified information and ... the very subject matter of the trial is a state secret"), *cert. denied*, 507 U.S. 1029, 113 S.Ct. 1843, 123 L.Ed.2d 468; *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 547–48 (2d Cir.1991) ("The very matter of this action is thus a state secret ... and there is no evidence available to the appellant to establish a prima facie case"); *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 281 (4th Cir.1980) (*en banc*) ("It is evident that any attempt on the part of the plaintiff to establish a prima facie case would so threaten disclosure of state secrets that the overriding interest of the United States and the preservation of its state secrets precludes any further attempt to pursue this litigation"); *Bentzlin v. Hughes Aircraft Co.*, 833 F.Supp. 1486, 1495 (C.D.Cal.1993) ("If proper assertion of the privilege precludes access to evidence necessary for the plaintiff to state a prima facie claim, dismissal is appropriate").

■ The Supreme Court recognized over 120 years ago that "public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential, and respecting which it will not allow the confidence to be violated." *Totten v. United States*, 92 U.S. 105, 107, 23 L.Ed. 605 (1875).[3] Here, Plaintiffs cannot provide the essential evidence to establish its *prima facie* case for any of its eleven claims due to the Defendants' assertion of the military and state secrets privilege. Accordingly, the Court will dismiss the Plaintiffs' case. *See Weston*, 881 F.2d at 816.

### III. Motion to Amend Complaint

Plaintiffs request leave of Court to allege additional claims under RCRA and violations of the Comprehensive Environmental Response, Compensation, & Liability Act ("CERCLA"). Plaintiffs, by their Motion to Amend, seek to add ten new causes of action to their complaint.[4] This motion was not timely filed, *see* Scheduling Order (# 17), and the Court could deny it on this basis.

However, federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." The Supreme Court and the Court of Appeals for the Ninth Circuit interpret this command of Rule 15(a) very liberally, in order to permit meritorious actions to go forward, despite inadequacies in the pleadings. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Schlacter–Jones v. General Telephone of California*, 936 F.2d 435, 443 (9th Cir.1991); *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.1981). A significant body of jurisprudence has developed in an attempt to define exactly when justice requires a court to grant leave to amend. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir.1989); *Howey v.*

---

3. In *Totten*, the plaintiff, a civil war spy, sued to collect on a secret contract he made with President Lincoln. Because litigation concerning that contract would necessarily involve matters of secrecy, the Supreme Court held that the case could not go forward. *Totten*, 92 U.S. at 107.

4. Claims 12 and 13 allege a violation of section 103 of CERCLA, codified at 42 U.S.C. § 9603, for failure to notify the EPA Administrator of the existence of the operating location and for failure to notify the National Response Center of a release. Claims 14 through 17 allege that the nondisclosure of the RCRA inventory due to its classification was a violation of RCRA (Claim 14) and the Administrative Procedure Act ("APA"). Claim 17 seeks review of the classification of documents more generally under the APA. Claims 18 and 19 allege a failure to obtain a Presidential exemption from RCRA disclosure requirements, in violation of RCRA and the APA respectively. Finally, Claims 20 and 21 allege a failure to obtain a Presidential exemption from CERCLA requirements, in violation of CERCLA and the APA respectively.

*U.S.,* 481 F.2d 1187, 1190 (9th Cir.1973); *Komie v. Buehler Corp.,* 449 F.2d 644, 647–48 (9th Cir.1971).

Courts commonly consider four factors when deciding whether to grant a motion for leave to amend a complaint: (1) bad faith or dilatory motive on the part of the movant; (2) undue delay in filing the motion; (3) prejudice to the opposing party; and (4) the futility of the proposed amendment. *Roth v. Marquez,* 942 F.2d 617, 628 (9th Cir.1991) (citing *DCD Programs v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987)).

The party opposing the motion for leave to amend a complaint bears the burden of showing prejudice. *DCD Programs,* 833 F.2d at 187 (citing *Beeck v. Aquaslide 'N' Dive Corp.,* 562 F.2d 537, 540 (8th Cir.1977)).

Furthermore, leave to amend need not be granted if the proposed amended complaint would be subject to dismissal. *Moore v. Kayport Package Exp., Inc.,* 885 F.2d at 538 (citing *Pan–Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 546 (5th Cir. 1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981)); *see also Johnson v. American Airlines,* 834 F.2d 721 (9th Cir.1987) ("courts have discretion to deny leave to amend a complaint for 'futility', and futility includes the inevitability of a claim's defeat on summary judgment"). A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff–Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988).

The issue of futility in this case involves the Court's jurisdiction and the failure to state claims for relief.

Plaintiffs' proposed Claims 12, 13, and 20 arise under CERCLA's citizen suit provision, 42 U.S.C. § 9659. A CERCLA citizen suit may be brought only after the plaintiff has provided 60–day notice of the alleged violations in accord with § 9659(d) or (e). *Boarhead Corp. v. Erickson,* 923 F.2d 1011, 1019 n. 13 (3d Cir.1991) (citing *Hallstrom v. Tillamook County,* 493 U.S. 20, 33, 110 S.Ct. 304, 312–13, 107 L.Ed.2d 237 (1988) (similar 60–day notice requirement under RCRA is jurisdictional requirement)); *Roe v.*

*Wert,* 706 F.Supp. 788, 794 (W.D.Okla.1989). This is a jurisdictional requirement for the Court. *See Roe v. Wert,* 706 F.Supp. at 794. Plaintiffs failed to provide the required notice of CERCLA claims. Accordingly, the Court lacks jurisdiction over these claims.

Claims 18 and 19 allege that Defendants have failed to seek a Presidential Exemption from the requirement to make the EPA inventory completed for the operating location near Groom Lake public. However, on September 29, 1995, President Clinton did exempt the operating location near Groom Lake from any provision under RCRA that would require the disclosure of classified information pertaining to the operating location to any unauthorized person. *See* Presidential Determination No. 95–45, published in 60 Fed.Reg. 52823. Accordingly, these claims are now moot. Similarly, Claims 14, 15, and 16 allege that Defendants violated RCRA section 3016(a), codified at 42 U.S.C. § 6937(a), by not making publicly available the inventory completed for the operating location near Groom Lake. The Presidential Exemption eliminates any possible requirement to do so, and so Claims 14, 15, and 16 fail to state claims for relief.

Claims 15, 16, and 17 seek judicial review of the classification of the RCRA inventory and other information. The Administrative Procedure Act ("APA") authorizes judicial review of agency action "made reviewable by statute and final agency action for which there is no adequate remedy in a court." 5 U.S.C. § 704. By the terms of the APA, the Court may only review activities that fall within the definition of "agency action." *See id.* As defined by the APA and for purposes of review, "agency action" is the "whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

A "rule" under the APA is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4). The Court finds that a classifica-

tion determination does not qualify as a "rule" for purposes of review under the APA.

 An "order" is defined in the APA as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." 5 U.S.C. § 551(6). A "license" is defined by the APA as including "the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission." 5 U.S.C. § 551(8). The Court finds that a classification determination neither qualifies as an "order" or as a "license" for purposes of review under the APA.

 A "sanction" is defined by the APA at 5 U.S.C. § 551(10), and "relief" is defined by the APA at 5 U.S.C. § 551(11). The Court finds that a classification determination neither qualifies as a "sanction" or as "relief" for purposes of review under the APA. Because the Court finds that classification determinations do not qualify as an "agency action" as defined by the APA, the Court may not review classification determinations under the APA. Accordingly, the Court lacks jurisdiction over Claims 15, 16, and 17.

 Claims 20 and 21 allege that the Defendants had a duty to obtain a Presidential Exemption pursuant to CERCLA § 120(j)(1), codified at 42 U.S.C. § 9620(j)(1). However, that section states in part as follows:

> Notwithstanding any other provision of law, all requirements of the Atomic Energy Law and all executive orders concerning the handling of restricted data and national security information, including "need to know" requirements, shall be applicable to any grant of access to classified information under the provisions of this chapter or under title III of the Superfund Amendments and Reauthorization Act of 1986.

42 U.S.C. § 9620(j)(2). Thus, pursuant to this section, CERCLA exempts classified information from release under any of its provisions. Accordingly, Claims 20 and 21 fail to state claims for relief.

As each of the ten claims for relief Plaintiffs seek to add to its Complaint are futile, the Court will not grant the Plaintiffs' Motion to File First Amended Complaint.

IT IS THEREFORE ORDERED THAT Defendants' Motion for Summary Judgment (# 70) is GRANTED;

IT IS FURTHER ORDERED THAT Plaintiffs' Motion for Consideration of Exhibits in Support of Plaintiffs' Statement of Contested Material Facts (# 204) is DENIED;

IT IS FURTHER ORDERED THAT Plaintiffs' Motion to File First Amended Complaint (# 146) is DENIED;

IT IS FURTHER ORDERED THAT Motion (1) to Strike Defendants' Notice of Untimely Filing and (2) for a Judicial Ruling on Consultation Certification (# 176) is GRANTED to the extent that it requests that Defendants' Notice of Untimely Filing be stricken and DENIED as moot to the extent that it requests a judicial ruling on consultation certification;

IT IS FURTHER ORDERED THAT the Clerk shall enter Judgment in favor of Defendants.